**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MICHAEL BRYANT,

      Plaintiff,

v.

PHARMACANN, INC., d/b/a LIVWELL ENLIGHTENED HEALTH, a Delaware Corporation

      Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

      Plaintiff Michael Bryant, by and through undersigned counsel, files this Complaint against PharmaCann, Inc., doing business as Livwell Enlightened Health (hereinafter "Livwell" or "Defendant").

## I.      JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3) and (4), which grant original jurisdiction to the Federal District Court in actions which arise under federal civil rights laws.

2.      This Court may hear Plaintiff's claims brought under Colorado law through supplemental jurisdiction under 28 U.S.C. § 1367 because such claims are so related to the claims under which this Court has original jurisdiction, that they form part of the same case and controversy.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred in the district, and because Defendant is authorized to do business and does business in the District of Colorado and is therefore subject to personal jurisdiction.

## II.    ADMINISTRATIVE PREREQUISITES

4.      Michael Bryant dually filed a Charge of Discrimination with the Colorado Civil Rights

Division ("CCRD") and the Equal Employment Opportunity Commission ("EEOC") against

Defendant Livwell (EEOC Charge No. 541-2025-04199) on or about July 23, 2025, alleging

discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended.

5.      This Complaint is filed within 90 days of the EEOC's Notice of Right to Sue, which was

issued on August 12, 2025.[1]

## III.    PARTIES

6.      Michael Bryant is a resident of and domiciled in the State of Colorado.

7.      Defendant Livwell is a Delaware corporation that is authorized to do business in

Colorado, with a principal office and mailing address of 60 West Superior, 2nd Floor, Chicago,

IL 60654.

8.      Defendant Livwell maintains CT Corporation System as its registered agent in Colorado,

located at 7700 East Arapahoe Road, Suite 220, Centennial, CO 80112.

## IV.    FACTUAL ALLEGATIONS

6.      From October 3, 2022, to July 22, 2025, Mr. Bryant worked for Livwell as a budtender at

their marijuana retail store located at 19201 East Colfax Avenue, Aurora, CO 80011.

7.      At the time of his termination, Mr. Bryant was a budtender specialist. In this position, Mr.

Bryant's job duties included selling to and interacting directly with customers, answering

questions and providing advice on specific products to be purchased.

---

[1] Mr. Byrant filed a subsequent Charge of Discrimination with the Colorado Civil Rights Division on November 7, 2025.

8.      Mr. Bryant is an African American man and, at all times relevant to this complaint, was perceived as such by his coworkers and managers at Livwell.

9.      On or around September 30, 2024, Mr. Bryant was approached by an agitated white female customer who began berating Mr. Bryant and demanding a refund after being dissatisfied with a previously purchased product.

10.      Mr. Bryant informed the customer that only a manager could process a refund and then immediately notified his white supervisor and manager on duty, Cutler Peters, to assist the customer with their requested refund.

11.      Once the customer left the store, Mr. Peters approached Mr. Bryant and stated "as a Black man, you have to learn how to talk to white women!"

12.      Mr. Bryant was offended by Mr. Peters' condescending and racist remark, and he reported the incident to Savanna White, the assistant manager at the time, of the 19201 East Colfax Avenue Livwell store.

13.      Throughout his employment with Livwell, Mr. Bryant continued to be harassed and discriminated against by his manager Cutler Peters.

14.      In November of 2024, Mr. Bryant was taking a short rest break following a busy rush of customers.

15.      Mr. Peters approached Mr. Bryant in the lobby of the Livwell store and began harassing Mr. Bryant, asking him why he wasn't attending to customers.

16.      Mr. Bryant informed Mr. Peters that he was taking one of his rest breaks while there was a lull in customers, and that he would return to his shift shortly.

17.    Mr. Peters became upset and ordered Mr. Bryant to return to the sales floor and be ready to assist customers or else he would receive a written warning in his file for refusing to follow a manager's direction.

18.    Mr. Bryant reminded Mr. Peters that company policy required managers to give employees verbal warnings before escalating to a written warning, and again stated that he was taking his one of his allotted rest breaks and was not required to attend to customers while doing so.

19.    Mr. Bryant did not witness Mr. Peters taking issue with any of his white coworkers refusing to attend to customers while on break, nor did he ever see Mr. Peters threaten his white coworkers with a written warning without first issuing a verbal warning.

20.    Mr. Peters reported Mr. Bryant to Livwell's General Manager, Andrew Giardini, claiming Mr. Bryant was insubordinate and had refused to follow managerial direction.

21.    Mr. Giardini spoke with Mr. Bryant soon after and informed him that he would be receiving a written warning based on the report made by Mr. Peters.

22.    Mr. Bryant responded by requesting that Mr. Peters also receive a written warning for singling out and harassing him, and that Mr. Giardini investigate the incident further before issuing a written warning.

23.    The following day, Mr. Giardini called Mr. Bryant to apologize for the way he handled the incident and informed him that he would be issuing a written warning to Mr. Peters for his conduct towards Mr. Bryant.

24.    In January of 2025, Mr. Bryant was informed by coworkers that Mr. Peters was complaining to Mr. Giardini that he believed Mr. Bryant was "stealing customers in the queue."

4

25.     The 19201 East Colfax Avenue Livwell location utilized a queue system in which customers enter the store and employees who are available to take the next customer press a button at their register "queuing" them to take the next available customer.

26.     The system places employees in the queue in the order that they report themselves available, and there is no way for one employee to jump ahead of another once in the queue.

27.     Despite the fact that Mr. Bryant was incapable ofmanipulating the queue system, Mr. Peters claimed Mr. Bryant was manipulating the queue system in order to receive an unequally high share of the customers shopping at the store and that this caused Mr. Peters and other sales employees to unfairly receive fewer tips than Mr. Bryant.

28.     Due to Mr. Peters' complaints, Mr. Giardini informed Mr. Bryant and the other sales employees that the company was considering abandoning the queue system in favor of a more equitable customer assignment system.

29.     Mr. Bryant is not aware of Mr. Peters complaining that any other employees benefitted unequally from the queue customer assignment system, nor complaining that any other employees were "stealing customers."

30.     On or around January 27, 2025, two customers who frequently visited the 19201 East Colfax Avenue Livwell store entered the store and asked Mr. Peters, who was working the check-in counter, if Mr. Bryant was working.

31.     Mr. Peters responded that the customers could not select individual employees by name and they would be assisted by whoever was open and ready to assist them.

32.    When the customers asked why requesting Mr. Bryant had suddenly become an issue when they had previously requested him without issue, Mr. Peters responded that Mr. Bryant is a "bully," who "needs to learn how to share with others and stop stealing customers."

33.    When the customers were let into the store, they immediately noticed Mr. Bryant and walked to his register for service despite Mr. Peters protests, visibly angering Mr. Peters.

34.    This resulted in Mr. Peters lodging another complaint against Mr. Bryant for stealing customers.

35.    In February of 2025, Mr. Bryant was working the check-in desk when another of his regular customers entered the store and requested that Mr. Bryant assist him with his purchase.

36.    It was Livwell's policy that when a customer requests the employee at the check-in desk to assist them with their purchase, the manager on duty briefly relieves the check-in desk employee or allows another employee on the sales floor to substitute in to cover the check-in desk for the single customer transaction.

37.    Another employee, Daniel Cruz, approached the check-in desk to relieve Mr. Bryant so that he could assist the customer with the single sale and then return to the check-in desk.

38.    As Mr. Cruz approached Mr. Bryant in front of the customer, he told Mr. Bryant to "hurry with the sale because I'm sick of covering these requests."

39.    Mr. Bryant was upset and confused by the comment as he did not believe Mr. Cruz was frequently asked to cover the check-in desk for him.

40.    This began a pattern of escalating behavior by Mr. Cruz toward Mr. Bryant, as Mr. Bryant was informed by other Livwell employees that Mr. Cruz frequently complained about Mr. Bryant and stated that he hated working with Mr. Bryant.

41.     When Mr. Bryant reported the harassing conduct to Livwell management, nothing was done to address the comments Mr. Cruz had made about Mr. Bryant.

42.     Despite Mr. Bryant's reports, Mr. Cruz was promoted to a manager position shortly after these incidents.

43.     In or around April of 2025, the 19201 East Colfax Avenue Livwell store switched to a rotational order instead of the queue system to determine which employee would serve a customer – each employee had a spot in a predetermined order and customers were assigned to go to the next employee in the rotational order.

44.     Mr. Bryant understood this change to be directly related to the complaints Mr. Peters had submitted regarding Mr. Bryant "stealing customers."

45.     On or around April 27, 2025, Mr. Bryant received news while at work that a family member had died the night before.

46.     Mr. Bryant informed Livwell's General Manager, Andrew Giardini, of the situation and asked to take his regular break early to call other family members about the situation.

47.     Mr. Giardini told Mr. Bryant to take all the time he needed, and Mr. Bryant exited the building to make a call on his cell phone.

48.     Mr. Cruz, now one of Livwell's shift managers, followed Mr. Bryant outside and approached him during the phone call, berating Mr. Bryant saying "I know you like to steal all of the customers and keep all the tips so, why aren't you in there making money, huh?" And "I know you want to make all the money like always, why don't you get back in there?"

49.     Mr. Bryant responded to Mr. Cruz that he was clearly on an important call and asked him to leave him alone and go back in the store to capitalize on Mr. Bryant's absence if he truly believed him to be stealing customers.

50.     Mr. Cruz, upset at Mr. Bryant's retort, threatened to use his newly appointed managerial power to give Mr. Bryant a written warning, circumventing the verbal warning process required by Livwell's company policies.

51.     Mr. Bryant walked away to de-escalate the situation and avoided Mr. Cruz for the remainder of the day.

52.     In June of 2025, Mr. Bryant was named employee of the month at the 19201 East Colfax Avenue Livwell store.

53.     Shortly after receiving the award, Mr. Bryant attended a company video conference with other Livwell employees from stores around the State of Colorado to discuss their experiences working at the company.

54.     After talking to Livwell employees from other locations on the video call, Mr. Bryant realized that the treatment he was suffering at the 19201 East Colfax Avenue location was not the typical experience of many of the white employees on the call.

55.     Learning that he was being treated differently than many white Livwell employees prompted Mr. Bryant to contact Livwell's regional managers Paul Fartellone and Trey Blies to inform them of the disparate treatment he was experiencing at the 19201 East Colfax Avenue location.

56.    Mr. Bryant specifically expressed concern with the harassment he faced from his shift managers and the failure by his general manager to address the issues, which was perpetuating the disparate treatment and emboldening the harassing employees.

57.    Both Mr. Fartellone and Mr. Blies told Mr. Bryant they would investigate the complaints and follow up with him at a later date, but that they took the allegations seriously.

58.    In or around late-June of 2025, Mr. Bryant was asked to attend a meeting with Livwell's General Manager Andrew Giardini, as well as Livwell's Regional Manager Paul Fartellone.

59.    During the meeting, Mr. Giardini told Mr. Bryant that other employees at the 19201 East Colfax Avenue store were "scared of him" and that it seemed the other employees were attempting to get him fired because they did not like working with him.

60.    Both Mr. Giardini and Mr. Fartellone reiterated to Mr. Bryant that he was a good employee and was a high earner for Livwell, and neither expressed concern that he was acting inappropriately toward his coworkers or that their claims of being scared of him were justified.

61.    However, neither Mr. Giardini nor Mr. Fartellone addressed Mr. Bryant's previous complaints of harassment or discrimination he had been subjected to by white Livwell employees and managers.

62.    On or around July 9, 2025, a customer entered the 19201 East Colfax Avenue Livwell store and approached Mr. Bryant's register.

63.    The customer began asking to see specific products from behind the counter and Mr. Bryant explained that he could show the customer the products, but could not let him touch the products because it could contaminate the product and render it unsellable.

64.     The customer then grabbed the products out of Mr. Bryant's hand and began threatening him, telling Mr. Bryant he would do as he pleased and threatening to physically harm Mr. Bryant for what he apparently perceived to be disrespect.

65.     Mr. Bryant responded that he was not disrespecting the customer but that he believed the customer was becoming disrespectful and Mr. Bryant politely asked that he leave the store.

66.     The customer continued to berate Mr. Bryant on his way out of the store and, once the customer exited the building, Mr. Bryant left the sales floor to report the incident to his managers on duty in the safe room in the back of the store.

67.     In order to get from the sales floor to the back of the store where his managers were located, Mr. Bryant had to wait for the customer to exit the only door to the sales floor, and then use that same exit to access the back of the store.

68.     The manager on duty, Nicholas Gunoe, told Mr. Bryant that he should not have refused the customer and should have come to retrieve him to handle the situation.

69.     Mr. Bryant informed Mr. Gunoe there was no way for him to do that in the moment, as the customer was physically threatening him and was blocking the only entrance in or out of the sales floor to get to where Mr. Gunoe was located.

70.     Mr. Gunoe dismissed Mr. Bryant's explanation and informed him that there would need to be an investigation into the incident to determine if Mr. Bryant would face discipline for his handling of the situation.

71.     Mr. Bryant requested to file his own incident report at that time so that he could document his side of the story for the investigation, but Mr. Gunoe denied that request and told

10

Mr. Bryant he would have a chance to tell his side of the story after corporate received the incident report and followed up with him.

72.    Mr. Bryant was placed on unpaid administrative leave while Livwell investigated the incident.

73.    On or around July 22, 2025, Livwell terminated Mr. Bryant claiming that he had followed the angry customer out of the sales room and attempted to escalate the situation to a physical altercation.

74.    Mr. Bryant was not given a chance to explain his side of the situation nor participate in the investigation.

75.    Defendant's actions complained of herein were intentional and done with malice or reckless indifference to Plaintiff's protected rights.

### FIRST CLAIM FOR RELIEF
### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. § 2000e *et seq.*

76.    Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

77.    Based on his race as a Black employee, Plaintiff belongs to a protected class under Title VII.

78.    Plaintiff was qualified for his position and had been satisfactorily performing his job for more than a year at the time he was terminated.

79.    Plaintiff's termination constitutes an adverse employment action under Title VII.

80.    The facts and circumstances of Plaintiff's termination give rise to an inference of unlawful discrimination that his race was a motivating factor considered by the Defendant in terminating Plaintiff.

81.    As a result of Defendant's unlawful discrimination, Mr. Bryant has suffered damages, including, but not limited to, past and future wage losses and loss of earning potential, past and future benefit losses, and noneconomic damages, including, but not limited to, mental suffering, emotional distress, humiliation, loss of reputation, loss of self-esteem, inconvenience, and loss of enjoyment of life.

82.    Defendant is also liable to Mr. Bryant for his attorney fees, costs, pre- and post-judgment interest at the statutory rate, in an amount to be determined.

**SECOND CLAIM FOR RELIEF**
**Harassment – Hostile Work Environment in Violation of**
**Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e *et seq.***

83.    Plaintiff incorporates by reference each and every allegation made in this complaint as if fully set forth herein.

84.    Defendant subjected Plaintiff to repeated incidents of harassment in the workplace stemming from race-related animus towards him as a Black man.

85.    Plaintiff was demeaned, ridiculed, and embarrassed by the conduct of his coworkers and managers.

86.    The conduct of Plaintiff's managers and coworkers was sufficiently severe and pervasive as to alter the terms and conditions of Plaintiff's employment by creating an abusive work environment.

87.     Defendant failed to take reasonable steps to prevent or correct this harassing conduct, despite Plaintiff informing Livwell management numerous times about the hostile work environment he was forced to suffer.

88.     As a direct and proximate result of these unlawful actions, Plaintiff suffered and continues to suffer damages described in paragraph 81 above.

89.     Defendant is also liable to Mr. Bryant for his attorney fees, costs, pre- and post-judgment interest at the statutory rate, in an amount to be determined.

**THIRD CLAIM FOR RELIEF**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
**42 U.S.C. § 2000e *et seq.***

90.     Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

91.     Plaintiff engaged in protected activity under Title VII by opposing the unlawful discrimination that he was subjected to by his coworkers as the only Black employee.

92.     Defendant was aware of Plaintiff's protected activity through his repeated reports of discrimination and harassment made to management.

93.     Defendant responded by failing to protect the Plaintiff from the harassment, failing to intervene between the harassing employees and the Plaintiff, and by ultimately firing the Plaintiff.

94.     There is a causal connection between the protected activity and the adverse treatment Plaintiff suffered.

95.     Defendant's retaliatory actions would dissuade a reasonable employee from engaging in protected activity under Title VII.

96. As a result of Defendant's unlawful discrimination, Mr. Bryant has suffered damages, including, but not limited to, past and future wage losses and loss of earning potential, past and future benefit losses, and noneconomic damages, including, but not limited to, mental suffering, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

**FOURTH CLAIM FOR RELIEF**
**Race Discrimination in Violation of the**
**Colorado Anti-Discrimination Act**
**C.R.S. § 24-34-401** *et seq.*

97. Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

98. Plaintiff was Defendant's employee under C.R.S. § 24-34-401(2), and Defendant was a qualifying employer under C.R.S. § 24-34-401(3).

99. Based on his race as a Black employee, Plaintiff belongs to a protected class under C.R.S. § 24-34-402(1)(a).

100. Plaintiff was qualified for his position and had been satisfactorily performing his job for more than a year at the time he was terminated.

101. Plaintiff's termination constitutes an adverse employment action under Colorado Anti-Discrimination Act ("CADA").

102. The facts and circumstances of Plaintiff's termination give rise to an inference of unlawful discrimination that his race was a motivating actor considered by the Defendant in terminating Plaintiff.

103. As a result of Defendant's unlawful discrimination, Mr. Bryant has suffered damages, including, but not limited to, past and future wage losses and loss of earning potential, past and

14

future benefit losses, and noneconomic damages, including, but not limited to, mental suffering,

emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

104.    Defendant is also liable to Mr. Bryant for his attorney fees, costs, pre- and post-judgment

interest at the statutory rate, in an amount to be determined.

**FIFTH CLAIM FOR RELIEF**
**Harassment – Hostile Work Environment in Violation of**
**Colorado Anti-Discrimination Act**
**C.R.S. § 24-34-401 *et seq.***

105.    Plaintiff incorporates by reference each and every allegation made in this complaint as if

fully set forth herein.

106.    Defendant subjected Plaintiff to repeated incidents of harassment in the workplace

stemming from race-related animus towards him as a black man.

107.    Plaintiff was demeaned, ridiculed, and embarrassed by the conduct of his coworkers and

managers.

108.    The conduct of Plaintiff's managers and coworkers was sufficiently severe and pervasive

as to alter the terms and conditions of Plaintiff's employment by creating an abusive work

environment.

109.    Defendant failed to take reasonable steps to prevent or correct this harassing conduct,

despite Plaintiff informing Livwell management numerous times about the hostile work

environment he was forced to suffer.

110.    As a direct and proximate result of these unlawful actions, Plaintiff suffered and

continues to suffer damages including, but not limited to, economic damages in lost past and

future wages and benefits, diminution of future earning capacity, loss of accumulated benefits,

mental anguish and other compensatory damages in an amount to be determined at trial.

15

111.    Defendant is also liable to Mr. Bryant for his attorney fees, costs, pre- and post-judgment interest at the statutory rate, in an amount to be determined.

**SIXTH CLAIM FOR RELIEF**
**Retaliation in Violation of the**
**Colorado Anti-Discrimination Act**
**C.R.S. § 24-34-401** *et seq.*

112.    Plaintiff hereby incorporates by reference all previous paragraphs as though fully set forth herein.

113.    Plaintiff engaged in protected activity under CADA by opposing the unlawful discrimination that he was subjected to by his coworkers as the only Black employee.

114.    Defendant was aware of Plaintiff's protected activity through his repeated reports of discrimination and harassment made to management.

115.    Defendant responded by failing to protect the Plaintiff from the harassment, failing to intervene between the harassing employees and the Plaintiff, and by ultimately firing the Plaintiff.

116.    There is a causal connection between the protected activity and the adverse treatment Plaintiff suffered.

117.    Defendant's retaliatory actions would dissuade a reasonable employee from engaging in protected activity under CADA.

118.    As a result of Defendant's unlawful discrimination, Mr. Bryant has suffered damages, including, but not limited to, past and future wage losses and loss of earning potential, past and future benefit losses, and noneconomic damages, including, but not limited to, mental suffering, emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

16

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter a judgment for the Plaintiff as follows:

a. An award of actual economic damages in amount to be determined at trial, including, but not limited to, lost past and future wages and benefits;

b. Non-economic damages in an amount to be determined at trial, including, but not limited to, mental suffering, emotional distress, humiliation, loss of reputation, loss of self-esteem, inconvenience, and loss of enjoyment of life;

c. An award of punitive damages;

d. An award of reasonable attorneys' fees and costs;

e. An award of Plaintiff's pre- and post-judgment interest; and

f. Ordering such and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted November 10, 2025

/s/ *Rachel E. Ellis*
Rachel E. Ellis
Rydge R. Rath
Livelihood Law, LLC
12015 E. 46th Avenue, Suite 240
Denver, CO 80239
Phone: (720) 465-6972
Email: ree@livelihoodlaw.com
        rrr@livelihoodlaw.com